



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| OWENS FINANCIAL GROUP, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., a Delaware Corporation; UNITED PARCEL SERVICE, INC., an Ohio Corporation; and UNITED PARCEL SERVICE GENERAL SERVICES CO., a Delaware Corporation,<br><br>Defendants. | CASE NO. 4:10 CV-16<br><br>CLASS ACTION COMPLAINT -HLM<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Owens Financial Group, Inc. (sometimes hereafter referred to as "Plaintiff" or "Owens"), by and through its attorneys, brings this action against Defendant United Parcel Service, Inc., a Delaware corporation; Defendant United Parcel Service, Inc., an Ohio corporation; and Defendant United Parcel Service General Services Co., a Delaware corporation (collectively referred to as "UPS" or "Defendant") for violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., and for breach of contract,

1

individually and on behalf of all other similarly situated individuals and entities. Plaintiff asserts the claims alleged herein upon knowledge as to its own acts and otherwise upon information and belief as follows:

## I. Background

1.    In 1907, Jim Casey started UPS's predecessor company, American Messenger Company, in Seattle, Washington.  In 1919, the company adopted its present name – United Parcel Service.  By 1993, UPS was delivering 11.5 million packages and documents per day.  The huge volume of packages required UPS to develop new technology.    In 1992, UPS developed the handheld Delivery Information Acquisition Device ("DIAD").    This device allowed electronic tracking of packages.  In 1995, UPS's website, UPS.com, enabled customers to track shipment of their packages.  UPS proudly claims that "[t]echnology is the backbone of everything we do at UPS."

2.    UPS holds itself out as the "largest package delivery company in the world, in terms of both revenue and volume."  UPS reports it serves 1.8 million pick-up customers and 6.1 million delivery customers daily.    In 2008, UPS delivered an average of 15.5 million pieces per day worldwide, for a total of 3.92 billion packages that year.  Total revenue in 2008 was $51.5 billion.  UPS operates a ground fleet of approximately 107,000 vehicles, which reach all business and

residential ZIP Codes in the contiguous United States. UPS also operates a fleet of approximately 570 aircraft.

3.　UPS's U.S. domestic package business consists of air and ground delivery of small packages – up to 150 pounds in weight – and letters to and from all 50 states. The domestic package business is built on an integrated air and ground pick-up and delivery network. All packages – domestic or international, commercial or residential, air or ground – are processed through one integrated network.

4.　UPS operates its aircraft in a hub and spoke pattern in the U.S. The principal hub in the U.S., known as Worldport, is located in Louisville, Kentucky. The Worldport facility consists of over 4.1 million square feet and includes approximately 596 acres. UPS is able to sort over 300,000 packages per hour in the Worldport facility. UPS also has regional air hubs in Columbia, South Carolina; Dallas, Texas; Hartford, Connecticut; Ontario, California; Philadelphia, Pennsylvania; and Rockford, Illinois. These hubs house facilities for the sorting, transfer, and delivery of packages. In 2008, UPS continued work on its Worldport facility expansion that will increase its sorting capacity by 37% to 416,000 packages per hour.

5.　James P. Kelly was UPS's Chief Executive Officer from 1997-2001.

3

6.    Michael L. Eskew has been a member of the Board of Directors at UPS since 1998.  In 1994, Mr. Eskew was named UPS's Corporate Vice President for Industrial Engineering.    Two years later, Mr. Eskew became Group Vice President for Engineering.  Mr. Eskew was appointed Executive Vice President in 1999 and Vice Chairman in 2000.  In January 2002, Mr. Eskew became Chairman and Chief Executive Officer.

7.    D. Scott Davis is UPS's current Chairman and Chief Executive Officer.  Mr. Davis has been a member of the Board of Directors since 2006.  Mr. Davis joined UPS in 1986, when the company acquired a technology company, II Morrow, where Mr. Davis had served as the Chief Financial Officer and then Chief Executive Officer.    From 1991 to 1998, Mr. Davis held positions of increasing responsibility with UPS as Treasury Manager, Financial Reports and Plans Manager, and Accounting Manager.  Mr. Davis was employed by UPS as Vice President of Finance in 2000.  Mr. Davis joined the UPS Management Committee and assumed the role of Chief Financial Officer in 2001.  In 2006, Mr. Davis was also appointed Vice Chairman.  Mr. Davis became Chairman and Chief Executive Officer on January 1, 2008.

8.    Defendant UPS, under a variety of names, such as "**Next Day Air**" and "**2nd Day Air**," sells its customers comparatively expensive "air" shipping

services for domestic letters, packages, and freight.   Plaintiff and other class members (the "Class") purchase these services from UPS.

9.     For the year ending December 31, 2008, UPS's revenue for **Next Day Air** was $6,559,000,000.  In 2008, UPS's average daily package volume for **Next Day Air** was 1,186,000 packages per day.  In 2008, UPS's average revenue per piece for **Next Day Air** was $21.95.

10.     Compared to air shipment, ground delivery constitutes a materially different level of service.   Charges for **Next Day Air** and **2nd Day Air** are substantially more expensive than charges for ground delivery.  The price to ship a package between two locations by air can be two to three times the price of sending the same package by ground.  For the year ending December 31, 2008, UPS's revenue for **Ground** was $21,394,000,000.  In 2008, UPS's average daily package volume for **Ground** was 11,443,000 packages per day.  In 2008, UPS's average revenue per piece for **Ground** was $7.42.

11.     Despite UPS's agreement to provide (and accept payment for) <u>air</u> shipping services, UPS has been systematically and deliberately substituting far less expensive <u>ground</u> shipping services, and UPS did not disclose to customers that they were paying for air services they never received. UPS has engaged in an organized and nationwide campaign to identify all air deliveries that feasibly could

5

be diverted to ground without missing the delivery deadlines, and has rerouted those packages for ground delivery whenever possible, all without customers' knowledge or consent. UPS has been charging Class members a steep premium for "air" services it never provided and never had any intention of providing. This wrongful practice is known internally at UPS as the "Air-In-Ground" program.

12.    UPS also has fraudulently assessed Fuel Surcharges adding to the cost of customer-purchased air shipments that were, in reality, diverted to ground delivery. These surcharges purport to compensate UPS for the rising costs of jet fuel, but, in fact, they are another means to fraudulently extract money from Class members' pockets. UPS's practice of imposing jet fuel-related fees for "air" shipments that never board a plane is fraudulent and unjustifiable.

13.    UPS has direct pickup at customer locations, "pick up" mailbox locations, and also locations known as "UPS Stores." After shippers turn over their packages, they are transported by ground to the nearest regional UPS Center ("Service Centers"). The Service Centers then sort the packages for air shipment or ground delivery and send them along to their next destination.

14.    Prior to 2001, many of the UPS Stores were owned and operated by independent third party franchisees as part of the UPS shipping network.

15.   In 2001, UPS acquired Mail Boxes Etc., Inc., a major franchisor of retail shipping locations.  Many of these franchisee locations were then re-branded as additional UPS Stores.  Other locations continued to operate under the name of Mail Boxes Etc., Inc.  The UPS and Mail Boxes Etc., Inc. stores, totaling more than 4,400, are independently owned and operated by third party franchisees as part of the UPS network.  These locations are hereinafter referred to as the "Retail Franchises."

16.   In addition to the Retail Franchises, UPS has entered into business and contractual relationships with Office Depot, Inc. and Staples, Inc. to provide additional UPS locations.  UPS has approximately 1,100 locations in Office Depot stores and 1,300 locations in Staples stores in the United States.  These locations are hereinafter referred to as the "UPS Alliance Locations."

17.   UPS also franchises thousands of other outlets in locations such as convenience stores.  These locations operate as additional independent franchisees hereinafter referred to as the "Additional Shipping Outlets."

## II.  Parties

18.   **Plaintiff Owens Financial Group, Inc.,** is a corporation incorporated under the laws of the state of Georgia and has a principal place of business in Rome, Georgia.  Owens is a citizen of Georgia.  Owens is engaged in the business

of providing financial consulting services.    Owens regularly ships letters to its clients by UPS.    In addition, Owens regularly receives letters from its clients shipped by UPS and billed to Owens' UPS account.

19.    **Defendant United Parcel Service, Inc.** is a corporation incorporated under the laws of the State of Delaware with a principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.    The registered agent is Corporation Service Company, 40 Technology Parkway South, Norcross, Georgia 30092.

20.    **Defendant United Parcel Service, Inc.** is a corporation incorporated under the laws of the State of Ohio with its principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.    The registered agent is Corporation Service Company, 40 Technology Parkway South, Norcross, Georgia 30092.

21.    **Defendant United Parcel Service General Services Co.** is a corporation incorporated under the laws of the State of Delaware with a principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia  30328.    The registered agent is Corporation Service Company, 40 Technology Parkway South, Norcross, Georgia  30092.

8

22.    Defendant United Parcel Service, Inc., a Delaware corporation, is the parent UPS corporate entity ("Parent UPS").   Parent UPS and its defendant subsidiaries effectively conduct business collectively as one integrated unit known as UPS.  UPS's business activities and operations are managed and controlled from Parent UPS's principal place of business at 55 Glenlake Parkway, N.E., Atlanta, Georgia, 30328.  Substantially all the administrative and operational decisions are made by the officers, directors, and employees located at UPS's principal place of business in Atlanta, Georgia.  Parent UPS lists its principal place of business as 55 Glenlake Parkway, N.E., Atlanta, Georgia, 30328.  All three entities identified as Defendants in this action have registered the same principal place of business in Atlanta, Georgia.  The UPS subsidiaries merely perform acts on behalf of and for the benefit of the Parent UPS.  Specifically, the "Air-in-Ground" scheme was created and implemented by Parent UPS.  At all material times, Parent UPS has managed, directed, controlled, and ratified all material and substantive aspects of the "Air-in-Ground" scheme on a daily and ongoing basis.  Plaintiff alleges herein multiple specific examples of racketeering activities of wire and mail fraud, for which Parent UPS is directly responsible and liable.  Subject to Parent UPS's direction and control, the "Air-in-Ground" scheme represents the collective actions of the UPS defendants.   The specific involvement of the subsidiary UPS

defendants in the "Air-in-Ground" scheme is uniquely within the knowledge of the UPS organization. Plaintiffs allege in detail the specific circumstances constituting the overall fraudulent "Air-in-Ground" scheme.

### III. Jurisdiction and Venue

23.    This action asserts claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.,* and for breach of contract,. Pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, this Court has subject matter jurisdiction over this nationwide class action because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which a member of the Class of plaintiffs is a citizen of a state different from UPS. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has subject matter jurisdiction over Count I of this Complaint pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) and (c) as a federal question arising under RICO. This Court has subject matter jurisdiction over Count II of this Complaint pursuant to 28 U.S.C. § 1331 and/or 28 U.S.C. § 1367.

24.    This Court has personal jurisdiction over UPS because UPS is subject to general jurisdiction in Georgia. UPS conducts substantial, continuous and systematic economic activities in Georgia. Venue is proper in this district pursuant

to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, UPS has agents and transacts substantial business in this district, and many members of the Class reside or do business in this district.

## IV. UPS's Wrongful "Air-In-Ground" Scheme

25.    "Air-In-Ground" is UPS's program of diverting customer packages from air transportation to ground transportation while billing its customers for air transportation.    The purpose of the "Air-in-Ground" program is to collect the higher price charged for air transportation while actually transporting packages more cheaply by ground.

26.    UPS developed the "Air-in-Ground" program around 1995.  Prior to the "Air-in-Ground" program, there was a policy at UPS which required an air package to be shipped by plane and a ground package to be shipped by truck.  The "Air-in-Ground" program was specifically designed to identify and sort air packages that UPS could transport by ground.

27.    Prior to implementing the "Air-in-Ground" program, UPS performed a computer analysis of origin and destination ZIP Codes and the Time-In-Transit between the various ZIP Codes.  The analysis allowed UPS to determine whether ground delivery could get air packages to their destinations on time.  If UPS could

11

timely transport an air package by ground, the package was then diverted to ground delivery.

28.    The "Air-in-Ground" program uses specially developed transit-time tables called "Sort Charts" to divert customer shipments from air transportation to ground transportation.    A Sort Chart is a list of ZIP Codes that identifies the destinations that can be reached by ground delivery in one or two days from each of UPS's Regional Service Centers.    Unique Sort Charts are posted at each UPS Regional Service Center.    The label on the customer's package provides the destination ZIP Code.    The first three digits of the destination ZIP Code are examined.    If the destination ZIP Code is on the Sort Chart and the "air" package can arrive on time on a ground truck, UPS will divert the package.    The "Air-in-Ground" program is a nationwide scheme to identify all air packages that can be diverted to ground delivery.

29.    The "Air-in-Ground" program and its Sort Charts were developed by UPS's Industrial Engineering (IE) Department more than a decade ago.    UPS employees, working with senior management, established and set goals concerning the percentage of air shipments that would be diverted to the "Air-in-Ground" program in each region of the country.    UPS's determined efforts to devise,

implement, and monitor the "Air-in-Ground" program demonstrate its premeditated and willful fraud against Plaintiff and the Class members.

30. When a customer selects the level of service (air or ground) for his package, he does not know that UPS has already pre-determined whether his air package will actually be shipped by air or ground. UPS does not tell the customer his air package will be shipped by ground or that he will be paying a higher price for a level of service he will not receive.

31. The rerouting of packages under the scheme is automatic. UPS -- but not the customer -- possesses all the information needed to identify air packages that can be diverted to ground delivery at the time the order is placed. When a customer presents a package to UPS for air shipment, UPS knows, based on ZIP Codes, that certain air packages will be shipped by ground. By use of the Sort Charts, UPS knows that all packages sent between certain ZIP Codes will be diverted to ground delivery. Nonetheless, UPS continues to offer and charge for air services that it knows will not be provided.

32. Despite UPS's agreement to provide *air* shipping services for a fee, UPS deliberately substitutes far less expensive *ground* shipping services and conceals the same from its customers who paid for air shipping. UPS's air transportation costs are much higher than its ground transportation costs. By

selling air transportation to customers and diverting the customers' packages to ground transportation, UPS has been able to fraudulently and dramatically increase its profits.

33.    Unknown to Plaintiff and the Class, UPS employed its practice of secretly diverting air shipments to ground delivery through the previously-described "Air-In-Ground" program for years.    Through this scheme, UPS knowingly and fraudulently charged (and continues to charge) Plaintiff and the Class higher prices for air services that UPS does not provide.  In many cases, the price of the air services UPS charged Plaintiff and Class members was two or three times higher than the price of the much cheaper ground services actually provided.

34.    Since its inception, UPS's fraudulent "Air-in-Ground" program has been carried out on a continuous and national basis.  Upon information and belief, the "Air-in-Ground" program has resulted in false and fraudulent overcharges to Plaintiff and the Class, which exceed hundreds of millions of dollars.

35.    At all relevant times, UPS suppressed and concealed the true facts relating to the "Air-in-Ground" program.  For example, shippers may obtain purported "tracking" reports from UPS via the internet.  The UPS "tracking" reports purport to reflect the details of a particular shipment, including tracking number, date of shipment, date and location of delivery, type and weight of

14

package, and level of "service." The "tracking" reports for Next Day Air and 2nd

Day Air shipments, which UPS has fraudulently diverted to ground shipment under

the "Air-in-Ground" program, falsely state that the level of "service" is, as

applicable, Next Day Air or 2nd Day Air. Thus, UPS website information does not

reveal and is designed to conceal whether the package was actually sent by air or

ground. In contrast, UPS's internal tracking system shows whether a purchased air

shipment was sent by air or ground. This allows UPS to identify and track the

number and percentage of air shipments which are deliberately diverted to ground

delivery pursuant to the "Air-In-Ground" program. UPS invoices also falsely state

that a package was shipped by air when the package was in fact diverted to ground

delivery. In some instances, UPS also affixes labels to packages which further

deceive the shipper into believing that his package will be or has been shipped by

air. UPS employees ignore these labels for packages that can be diverted to

ground.

36.    Due to UPS's knowing and active concealment, misleading actions,

and deliberate misrepresentations relating to the "Air-in-Ground" program,

Plaintiff and the Class could not have reasonably discovered UPS's wrongful and

fraudulent diversion of air shipments to ground delivery.

37.    This "Air-in-Ground" fraud has allowed UPS to reap hundreds of millions of dollars of unjustified fees at the Class' expense.  This practice is designed and continually massaged to divert tens of thousands of air shipments to ground every day, all unbeknownst to the innocent shipper.

38.    This action is brought to recover damages Plaintiff and the Class have suffered as a result of UPS's fraudulent scheme.

### V.  The Fraudulent Aviation Fuel Surcharge

39.    This action is also brought to recover years of fraudulently assessed aviation Fuel Surcharges that UPS added to the cost of air shipments that were actually sent by ground.  In approximately 2000, UPS began assessing aviation Fuel Surcharges for air shipments and diesel Fuel Surcharges for ground shipments.  Aviation Fuel Surcharges are substantially higher than diesel Fuel Surcharges.  The aviation Fuel Surcharges were supposed to compensate UPS for the rising cost of *jet fuel*, but were instead part of its scheme to fraudulently charge Plaintiff and the Class additional money for air shipments that were delivered by ground.  UPS's practice of imposing aviation Fuel Surcharges for "air" shipments that never board a plane is fraudulent, unjustifiable, and directly contradicts its Corporate Code of Conduct.

40.    UPS's Corporate Code of Conduct states that UPS is required "to conduct business fairly, honestly, and ethically."  Its Code of Conduct also states that "[w]e do not misrepresent our services or products in any sales or promotional efforts."  UPS's Code of Conduct further goes on to claim "[w]e communicate clearly, so that our customers understand the terms of our business relationships, including contracts, performance criteria, schedules, prices, and responsibilities."

41.    Despite these claims of corporate good citizenship and morality, UPS, through these deliberate acts and fraudulent schemes, has defrauded Class members out of hundreds of millions of dollars.

42.    UPS assesses these aviation Fuel Surcharges on customers selecting **Next Day Air** or **2nd Day Air**.  However, aviation Fuel Surcharges are wrongfully imposed on Class members for air shipments that are knowingly diverted to ground, thereby charging Plaintiff and the Class for the cost of jet fuel that was never expended.

43.    As part of protecting its "Air-in-Ground" scheme, UPS had to apply aviation surcharges to air shipments that were, in fact, knowingly sent by ground. Otherwise, the assessment of a ground surcharge for a purported air shipment package would have alerted a shipper to the scheme.  The knowing assessment of inapplicable aviation fuel surcharges to ground-delivered packages was part of

17

UPS's concerted effort to perpetuate the "Air-in-Ground" program and to shield it from the public eye and obtain further, unwarranted profits at the expense of Plaintiff and the Class.

44.    These additional fraudulent and unjustifiable overcharges damaged Plaintiff and the Class and substantially increased UPS's fraudulently-obtained revenues from its "Air-in-Ground" scheme.

## VI. Specific Examples of UPS's Fraudulent Charges and Wrongful Diversion of Plaintiff's Packages

45.    Plaintiff Owens has a shipping account with UPS.  UPS identifies Owens by Shipper Number 2A115X.

46.    Owens regularly ships letters and packages to clients in connection with its business.

47.    On August 27, 2009, Owens (ZIP Code 30161) sent a shipment by **Next Day Air Residential** to its client, Donald Ray Ellison, in Sylacauga, Alabama (ZIP Code 35151).  The UPS Tracking Number for this shipment was 1Z2A115X2210028454.  The Invoice from UPS shows: a delivery charge of $14.85; a Residential Surcharge of $2.40; a Delivery Area Surcharge – Extended of $2.65; and a Fuel Surcharge of $1.29, for a Total of $21.19.  On or about October 13, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X389 dated September 19, 2009) by check number 6548.

18

48. Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 47 to ground delivery.

49. Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 47.

50. On August 31, 2009, Donald Ray Ellison, a client of Owens in Sylacauga, Alabama (ZIP Code 35150), sent a shipment by **Next Day Air Commercial** to Owens in Rome, Georgia (ZIP Code 30165) using Owens' Shipper Number. The UPS Tracking Number for this shipment was 1Z2A115X2210028463. The Invoice from UPS shows: a delivery charge of $14.85; and a Fuel Surcharge of $0.97, for a Total of $15.82. On or about September 23, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X369 dated September 5, 2009) by check number 6521.

51. Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 50 to ground delivery.

52. Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 50.

53.    On September 24, 2009, Owens (ZIP Code 30161) sent a shipment by **Next Day Air Residential** to its client, Dorothy Mullins, in Bristol, Tennessee (ZIP Code 37620).    The UPS Tracking Number for this shipment was 1Z2A115X2210028525.    The Invoice from UPS shows: a delivery charge of $17.55; a Residential Surcharge of $2.40; and a Fuel Surcharge of $1.10, for a Total of $21.05.    On or about November 2, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X429 dated October 17, 2009) by check number 6578.

54.    Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 53 to ground delivery.

55.    Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 53.

56.    On October 20, 2009, Owens (ZIP Code 30161) sent a shipment by **Next Day Air Commercial** to its client, Reed's Building Supply, in Buford, Georgia (ZIP Code 30518).    The UPS Tracking Number for this shipment was 1Z2A115X2210028203.    The Invoice from UPS shows a delivery charge of $14.85; and a Fuel Surcharge of $1.11, for a Total of $15.96.    On or about

December 3, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X469 dated November 14, 2009) by check number 6618.

57.    Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 56 to ground delivery.

58.    Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 56.

59.    On October 28, 2009, Owens (ZIP Code 30165) sent a shipment by **2nd Day Air Commercial** to its client, Jim Soules (misidentified on the relevant UPS Delivery Service Invoice as Jim Sowes), in Parkland, Florida (ZIP Code 33076).    The    UPS    Tracking    Number    for    this    shipment    was 1Z2A115X3710013692.    The Invoice from UPS shows: a delivery charge of $10.05; and a Fuel Surcharge of $0.75, for a Total of $10.80.    The same invoice also reflects the following adjustments: a Residential Surcharge in the amount of $2.40, and a Fuel Surcharge in the amount of $0.18, for a total adjustment of $2.58. On or about November 13, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X449 dated October 31, 2009) by check number 6596.

60.    Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 59 to ground delivery.

61.    Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 59.

62.    On December 8, 2009, Plaintiff Owens (ZIP Code 30165) sent a shipment by **2nd Day Air Commercial** to its client, Amanda Starling, in Hahira, Georgia (ZIP Code 31632).   The UPS Tracking Number for this shipment was 1Z2A115X3710013674.  The Invoice from UPS shows: a delivery charge of $9.65; a Delivery Area Surcharge – Extended of $1.60; and a Fuel Surcharge of $0.96, for a Total of $12.21.  The same invoice also reflects the following adjustments: a Residential Surcharge in the amount of $2.40, a Delivery Area Surcharge – Extended in the amount of $1.05, and a Fuel Surcharge in the amount of $0.29, for a total adjustment of $3.74.  On or about December 28, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X509 dated December 12, 2009) by check number 6655.

63.    Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 62 to ground delivery.

64.    Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 62.

65.    On December 21, 2009, Plaintiff Owens (ZIP Code 30165) sent a shipment by **Next Day Air Commercial** to its client, Mark Snead, in Centre, Alabama (ZIP Code 35960).    The UPS Tracking Number for this shipment was 1Z2A115X2210028258.    The Invoice from UPS shows: a delivery charge of $14.85; a Delivery Area Surcharge – Extended of $1.60; and a Fuel Surcharge of $1.40, for a Total of $17.85.    The Invoice further reflects an adjustment to these charges in the amount of $3.74, including a Residential Surcharge in the amount of $2.40; a Delivery Area Surcharge – Extended in the amount of $1.05; and a Fuel Surcharge in the amount of $0.29.    On or about January 18, 2010, Owens paid UPS for this shipment (Invoice Number 00002A115X529 dated December 26, 2009) by check number 6685.

66.    Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 65 to ground delivery.

67.    Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 65.

## VII. Class Action Allegations

68.    Pursuant to F.R.C.P. 23(a) and 23(b)(3), Plaintiff brings this action on its own behalf and on behalf of all persons and entities in the United States who

have suffered or will suffer monetary loss as a result of paying charges for an air shipment which UPS diverted to ground shipment.

69.    Excluded from this Class are: (a) UPS and any entity in which UPS has a controlling interest, and its legal representatives, officers, directors, assignees, and/or successors; (b) any federal or state government or entity; and (c) any judge to whom this case is assigned, together with any relative of such judge within the third degree of relationship, and the spouse of any such person.

70.    **Numerosity** - The Class is composed of thousands of persons and entities throughout the United States.  The joinder of such persons and entities in one action is impracticable.  The members of the Class are ascertainable and identifiable (from UPS's own internal records) and the Class is manageable.  The Class members may be reasonably determined through discovery from the records of UPS.

71.    **Common Factual and Legal Issues** - There are questions of law and fact common to the Class.  The common legal and factual issues include, but are not limited to, the following: (a) whether UPS has engaged in a pattern of racketeering activity in connection with the diversion of air shipments to ground delivery; (b) whether UPS has committed wrongful acts of wire fraud and mail fraud in furtherance of its racketeering activity; (c) whether UPS has breached

Contracts with Plaintiff and the Class by charging for the air shipment level of service for packages diverted to ground shipment; (d) whether UPS has breached Contracts by charging Plaintiff and the Class for aviation Fuel Surcharges for air packages diverted to ground shipment; and (e) whether Plaintiff and the Class are entitled to relief including but not limited to actual damages, treble damages, and attorneys' fees.

72.    **Typicality of Plaintiff** - Plaintiff's claims are typical of the claims of the Class because all such claims arise out of the common wrongful conduct of UPS's diverting air shipments to ground delivery and charging the customer for air shipment.

73.    **Adequacy of Representation** - Plaintiff and its attorneys will fairly and adequately protect the interests of the Class.    Plaintiff has no interest antagonistic to the Class.    Plaintiff has retained Class counsel experienced in the prosecution of complex litigation, including complex class actions, and such counsel will fully, fairly, and adequately represent Plaintiff and the Class.

74.    **Predominance and Superiority** - This class action is appropriate for certification under F.R.C.P. 23(b)(3) because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.    A class action is superior to other available methods for the fair and

efficient adjudication of this controversy, since individual joinder of all Class members is impracticable. Should individual Class members be required to bring separate actions, this Court and courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action is fully manageable and will provide unitary adjudication, economies of scale, and comprehensive supervision by a single Court.

## VIII. Tolling of Applicable Statutes of Limitations and Estoppel

75.    UPS had and continues to have superior knowledge to Plaintiff and the Class regarding its practice of diverting air packages to ground delivery ("Air-in-Ground" program). However, UPS concealed this practice and the fraudulent air shipment charges. Plaintiff and the Class were affirmatively misled by UPS's knowing and active concealment and would have acted differently but for such concealment (e.g., who would knowingly pay two or three times as much for a (fake) air shipment if it's going by (real) ground anyway?).

76.    As a result of UPS's concealment, no cause of action accrued to Plaintiff and no applicable statute of limitations began to run until Plaintiff's recent

discovery of the fraudulent practice of diverting air packages to ground delivery. Plaintiff had no basis or reason to suspect that UPS was charging for services that UPS never rendered.  Plaintiff had no ability to protect its rights prior to such discovery.

77.    Any notice or limitations periods have been tolled by UPS's knowing and active concealment and intentionally misleading actions with respect to the fraudulent practice of diverting air packages to ground delivery ("Air-in-Ground" program).  UPS has concealed from Plaintiff and the Class vital information essential to the discovery and pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff or the Class.  Plaintiff and the Class could not reasonably have discovered this information at any time sooner.

78.    UPS's active concealment includes but is not limited to the following: (a) falsely stating on the invoices or billings that the package was delivered by air when, in fact, the package was delivered by ground; (b) placing air shipment labels on packages which were actually delivered by ground; and (c) concealing UPS's knowing diversion of air packages to ground shipment on the computerized tracking system which UPS makes available to shippers.  The computer tracking system specifically identifies the purchased level of service (air shipment), but does not disclose that the shipment was actually diverted to ground delivery.

79.    UPS is also equitably estopped from relying on any purported notice of claim requirements, pleading requirements, or shortened contractual or applicable statutory limitations periods in defense of this action. The causes of action alleged herein have not and will not properly accrue until full and complete disclosure of the fraudulent practice of diverting air packages to ground delivery ("Air-in-Ground" program) and the associated fraudulent practice of billing for air shipment when the package was delivered by ground.

## COUNT I
## RICO

80.    Plaintiff, individually and on behalf of the putative Class, restates and incorporates herein the preceding paragraphs of the Complaint.

81.    This Count, which alleges substantive violations of RICO as provided in 18 U.S.C. § 1962(c), is asserted against Defendant on behalf of Plaintiffs and the Class.

82.    Plaintiff, the Class, and UPS are "persons" as defined by 18 U.S.C. §1961(3) because they are individuals or entities capable of holding a legal or beneficial interest in property.

### Pattern of Racketeering Activity

83.    UPS has wrongfully participated in the conduct of an enterprise through a pattern of racketeering activity which has directly injured Plaintiff and

the Class in their business and property in violation of 18 U.S.C. 1962(c). UPS sets both the prices and the terms and conditions of sale for Air shipping services, as well as manages the conduct of the affiliates in the shipping network in other ways.

84.    The pattern of racketeering activity has been ongoing on a regular and continuous basis for more than ten years.

85.    "Air-In-Ground" is UPS's program of diverting customer packages from air transportation to ground transportation while billing its customers for air transportation. The purpose of the "Air-in-Ground" program is to collect the higher price charged for air transportation while actually transporting packages more cheaply by ground.

86.    Despite UPS's agreement to provide *air* shipping services for a fee, UPS deliberately substitutes far less expensive *ground* shipping services and conceals the same from its customers who paid for air shipping. By selling air transportation to customers and diverting the customers' packages to ground transportation, UPS has been able to fraudulently and dramatically increase its profits.

87.    In approximately 2000, UPS began assessing aviation Fuel Surcharges for air shipments and diesel Fuel Surcharges for ground shipments. Aviation Fuel

29

Surcharges are substantially higher than diesel Fuel Surcharges. UPS assesses these aviation Fuel Surcharges on customers selecting **Next Day Air** or **2nd Day Air**. The aviation Fuel Surcharges are wrongfully imposed on Plaintiffs and the Class members for air shipments that are knowingly diverted to ground. By imposing aviation Fuel Surcharges, UPS charges Plaintiffs and the Class for the cost of jet fuel that was never expended.

### Association-In-Fact Enterprise

88.     The enterprise is an association-in-fact which includes UPS, the Retail Franchises, UPS Alliance Locations, and the Additional Shipping Outlets. The association-in-fact alleged herein constitutes an "enterprise" within the meaning of 18 U.S.C. §1961(4).

89.     The association-in-fact enterprise is a group of separate and distinct entities associated together for the common purpose of shipping packages in the United States through the UPS shipping network. Many other entities, including affiliates of UPS and other third party entities, are also part of the UPS shipping network. The enterprise is engaged in, and its activities affect, interstate commerce.

90.     This association-in-fact enterprise constitutes an ongoing organization based upon the continuing contractual and other business relationships between

UPS, the Retail Franchises, UPS Alliance Locations, and the Additional Shipping Outlets. The association-in-fact enterprise has a structure separate and distinct from the pattern of racketeering activity.

91.    UPS has conducted the affairs of the association-in-fact enterprise through a pattern of racketeering activity as defined in 18 U.S.C. §1961(1) and (5). As stated, UPS sets both the prices and the terms and conditions of sale for Air shipping services as well as manages the conduct of the affiliates in the shipping network in other ways.

## Predicate Acts of Mail and/or Wire Fraud

92.    UPS participated in and/or controlled the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Acts of mail fraud and/or wire fraud are committed each time Defendant sends Plaintiff and the Class an invoice for payment of charges for air shipments and aviation Fuel Surcharges on shipments that UPS diverted to ground delivery. These acts are indictable under 18 U.S.C. § 1341 (mail fraud) and/or 18 U.S.C. § 1343 (wire fraud). Defendant has committed these predicate acts of mail fraud and/or wire fraud with a specific intent to defraud and in furtherance of the scheme to defraud ("Air-in-Ground") frequently and continuously for more than ten years. Specific incidents

of mail and/or wire fraud, including the dates and amounts of the fraudulent billings, are set forth below.

93.    UPS transmitted the fraudulent bills for air shipments wrongfully diverted to ground delivery to Plaintiff and to the Class on hundreds of thousands of occasions through the U.S. Mail and/or transmission via wire facilities (i.e., by facsimile or electronically), in violation of 18 U.S.C. 1341 and 1343.

94.    UPS has also fraudulently used the U.S. Mail and wires in violation of 18 U.S.C. 1341 and 1343 to facilitate the "Air-in-Ground" program in the following additional ways:  (a) for oral and written communications between customers and UPS; (b) for internal oral and written communications between UPS officers and employees; (c) for oral and written communications with Retail Franchises, UPS Alliance Locations, and Additional Shipping Outlets; and (d) to receive payment from Plaintiff and the Class for the wrongful and fraudulent UPS charges.  The specific number of predicate acts cannot fully be alleged without access to UPS's books and records but is estimated to be hundreds of thousands of occurrences.

95.    UPS's wire fraud and mail fraud has been in furtherance of the UPS scheme or artifice to defraud or obtain money by means of false or fraudulent

pretenses concerning the practice of diverting air packages to ground delivery and charging the customer for air shipment ("Air-in-Ground" program).

96.    UPS has utilized said wire fraud and mail fraud to conduct an ongoing pattern of racketeering.  The racketeering acts are directly related to each other and have a common purpose.  The wrongful conduct of diverting air packages to ground delivery and charging the customer for air shipment ("Air-in-Ground" program) has been ongoing and continuous since 1995 and will continue in the future, absent relief in this action.

97.    UPS could not have carried out its "Air-in-Ground" program without conducting the same fraudulent activities through all branches of its shipping network (the enterprise).  Had UPS not implemented the "Air-in-Ground" program for all shipments, regardless of how they were commissioned, the fraud it was perpetrating would have come to light.   Therefore, UPS's fraud through the enterprise was a necessary part of the "Air-in-Ground" program as a whole.

## Specific Examples of Racketeering Activity

**August 27, 2009 Shipment:**

98.    On August 27, 2009, Owens (ZIP Code 30161) sent a shipment by **Next Day Air Residential** to its client, Donald Ray Ellison, in Sylacauga, Alabama (ZIP Code 35151).  The UPS Tracking Number for this shipment was

1Z2A115X2210028454.    The Invoice from UPS shows: a delivery charge of $14.85; a Residential Surcharge of $2.40; a Delivery Area Surcharge – Extended of $2.65; and a Fuel Surcharge of $1.29, for a Total of $21.19.    On or about October 13, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X389 dated September 19, 2009) by check number 6548.

99.    Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 98 to ground delivery.

100.    Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 98.

101.    On or about September 19, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails.    This act constitutes a violation of 18 U.S.C. § 1341.

**August 31, 2009 Shipment:**

102.    On August 31, 2009, Donald Ray Ellison, a client of Owens in Sylacauga, Alabama (ZIP Code 35150), sent a shipment by **Next Day Air Commercial** to Owens in Rome, Georgia (ZIP Code 30165) using Owens' Shipper Number.    The UPS Tracking Number for this shipment was 1Z2A115X2210028463.    The Invoice from UPS shows: a delivery charge of

$14.85; and a Fuel Surcharge of $0.97, for a Total of $15.82. On or about September 23, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X369 dated September 5, 2009) by check number 6521.

103. Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 102 to ground delivery.

104. Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 102.

105. On or about September 5, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails. This act constitutes a violation of 18 U.S.C. § 1341.

**September 24, 2009 Shipment:**

106. On September 24, 2009, Owens (ZIP Code 30161) sent a shipment by **Next Day Air Residential** to its client, Dorothy Mullins, in Bristol, Tennessee (ZIP Code 37620). The UPS Tracking Number for this shipment was 1Z2A115X2210028525. The Invoice from UPS shows: a delivery charge of $17.55; a Residential Surcharge of $2.40; and a Fuel Surcharge of $1.10, for a Total of $21.05. On or about November 2, 2009, Owens paid UPS for this

shipment (Invoice Number 00002A115X429 dated October 17, 2009) by check number 6578.

107.  Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 106 to ground delivery.

108.  Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 106.

109.  On or about October 17, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails.  This act constitutes a violation of 18 U.S.C. § 1341.

**October 20, 2009 Shipment:**

110.  On October 20, 2009, Owens (ZIP Code 30161) sent a shipment by **Next Day Air Commercial** to its client, Reed's Building Supply, in Buford, Georgia (ZIP Code 30518).  The UPS Tracking Number for this shipment was 1Z2A115X2210028203.  The Invoice from UPS shows a delivery charge of $14.85; and a Fuel Surcharge of $1.11, for a Total of $15.96.  On or about December 3, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X469 dated November 14, 2009) by check number 6618.

111. Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 110 to ground delivery.

112. Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 110.

113. On or about November 14, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails. This act constitutes a violation of 18 U.S.C. § 1341

**October 28, 2009 Shipment:**

114. On October 28, 2009, Owens (ZIP Code 30165) sent a shipment by **2nd Day Air Commercial** to its client, Jim Soules (misidentified on the relevant UPS Delivery Service Invoice as Jim Sowes), in Parkland, Florida (ZIP Code 33076). The UPS Tracking Number for this shipment was 1Z2A115X3710013692. The Invoice from UPS shows: a delivery charge of $10.05; and a Fuel Surcharge of $0.75, for a Total of $10.80. The same invoice also reflects the following adjustments: a Residential Surcharge in the amount of $2.40, and a Fuel Surcharge in the amount of $0.18, for a total adjustment of $2.58. On or about November 13, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X449 dated October 31, 2009) by check number 6596.

115. Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 114 to ground delivery.

116. Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 114.

117. On or about October 31, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails. This act constitutes a violation of 18 U.S.C. § 1341.

**December 8, 2010 Shipment:**

118. On December 8, 2010, Plaintiff Owens (ZIP Code 30165) sent a shipment by **2nd Day Air Commercial** to its client, Amanda Starling, in Hahira, Georgia (ZIP Code 31632). The UPS Tracking Number for this shipment was 1Z2A115X3710013674. The Invoice from UPS shows: a delivery charge of $9.65; a Delivery Area Surcharge – Extended of $1.60; and a Fuel Surcharge of $0.96, for a Total of $12.21. The same invoice also reflects the following adjustments: a Residential Surcharge in the amount of $2.40, a Delivery Area Surcharge – Extended in the amount of $1.05, and a Fuel Surcharge in the amount of $0.29, for a total adjustment of $3.74. On or about December 28, 2009, Owens paid UPS for this shipment (Invoice Number 00002A115X509 dated December 12, 2009).

119. Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 118 to ground delivery.

120. Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 118.

121. On or about December 12, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails. This act constitutes a violation of 18 U.S.C. § 1341.

**December 21, 2009 Shipment:**

122. On December 21, 2009, Plaintiff Owens (ZIP Code 30165) sent a shipment by **Next Day Air Commercial** to its client, Mark Snead, in Centre, Alabama (ZIP Code 35960). The UPS Tracking Number for this shipment was 1Z2A115X2210028258. The Invoice from UPS shows: a delivery charge of $14.85; a Delivery Area Surcharge – Extended of $1.60; and a Fuel Surcharge of $1.40, for a Total of $17.85. The Invoice further reflects an adjustment to these charges in the amount of $3.74, including a Residential Surcharge in the amount of $2.40; a Delivery Area Surcharge – Extended in the amount of $1.05; and a Fuel Surcharge in the amount of $0.29. On or about January 18, 2010, Owens paid UPS for this shipment (Invoice Number 00002A115X529 dated December 26, 2009).

123.   Upon information and belief, UPS wrongfully and fraudulently diverted the air shipment described in paragraph 122 to ground delivery.

124.   Upon information and belief, UPS wrongfully and fraudulently charged Plaintiff for air shipment and aviation fuel for the shipment described in paragraph 122.

125.   On or about December 26, 2009, UPS sent Plaintiff a false and fraudulent invoice relating to this shipment through the U.S. Mails.   This act constitutes a violation of 18 U.S.C. § 1341.

126.   Because of UPS's knowing and active concealment, and misleading actions and misrepresentations relating to the "Air-in-Ground" program, Plaintiff and the Class could not have reasonably discovered UPS's fraudulent diversion of air shipments to ground delivery.

127.   Plaintiff and the Class have been damaged as a direct and proximate result of UPS's participation in the enterprise in the amount of hundreds of millions of dollars.   Damages incurred by Plaintiff and the Class include money paid as a result of UPS's fraudulent bills and charges for air shipments sent by ground and for fraudulent aviation Fuel Surcharges.

## COUNT II
## BREACH OF CONTRACT

128.    Plaintiff, individually and on behalf of the putative Class, restates and incorporates herein the preceding paragraphs of the Complaint.

129.    Plaintiff and the Class entered into contracts with UPS whereby UPS agreed to ship packages for Plaintiff and the Class based on a pre-determined rate and agreed upon level of service (air shipment).  The contracts existed to govern the relationship between UPS and the members of the Class, including Plaintiff, during the time period relevant to this Complaint.

130.    Plaintiff and the Class have performed all conditions required of them under the contracts by paying the agreed upon rate for air shipment of the packages and by paying the aviation Fuel Surcharges.

131.    UPS materially breached its contracts for air shipment with Plaintiff and the Class by billing and collecting charges for the air shipment level of service when UPS diverted the packages to ground delivery.

132.    UPS materially breached its contracts for air shipment with Plaintiff and the Class by billing and collecting aviation Fuel Surcharges from Plaintiff and the Class for packages diverted and delivered by ground.

133.    Conditions precedent to the commencement of this action, if any, have been performed, waived, or excused.

134.   Plaintiff and the Class are excused from complying with any terms of any contracts regarding purported notice, pleading, or other claim filing requirements and/or limitations, and UPS is barred from enforcing any such requirements or limitations based upon UPS's fraudulent concealment and the doctrines of equitable estoppel and unconscionability.   Performance by Plaintiff and the Class is excused by UPS's material breaches.

135.   Plaintiff and the Class have sustained substantial economic loss and damages as a direct and proximate result of UPS's breaches of the contracts.

136.   UPS is liable to Plaintiff and the Class for the difference in price between the air shipments purchased and the ground shipments provided.

137.   UPS is liable to Plaintiff and the Class for the difference in price between the aviation Fuel Surcharges and the ground Fuel Surcharges.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class respectfully request that the Court enter judgment against Defendant as follows:

(a) Certify the proposed Class under F.R.C.P. 23(a) and 23(b);

(b) Award actual and compensatory damages;

(c) Award treble damages pursuant 18 U.S.C. §1964(c);

(d) Order preliminary and permanent injunctive relief enjoining UPS, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, from in any way engaging in the practices set forth herein;

(e) Award appropriate attorneys' fees, pursuant to 18 U.S.C. §1964 and other applicable statutes;

(f) Award costs of suit incurred herein;

(g) Award both pre- and post-judgment interest on any amounts awarded; and

(h) Order such other and further relief as the Court deems just and proper under the circumstances.

### Jury Trial Demanded

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: February 17, 2010.



Robert K. Finnell
Georgia Bar #261575
ROBERT K. FINNELL, P.C./THE FINNELL FIRM
P.O. Box 63
Rome, GA 30162-0063
One West Fourth Avenue
Suite 200
Rome, GA 30161
Telephone: (706) 235-7272
FAX: (706) 235-9461
Email: bob@finnelllawfirm.com
Attorney for Plaintiff

William Q. Bird
Georgia Bar #057900
BIRD LAW GROUP, P.C.
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 873-4696
FAX: (404) 872-3745
Email: billbird@birdlawgroup.com
Attorney for Plaintiff

Jonathan H. Waller
Georgia Bar #734550
G. Douglas Jones
Alabama Bar #3880-S82G
Kirk D. Smith
Georgia Bar #661376
HASKELL SLAUGHTER
YOUNG & REDIKER, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203

Telephone: (205) 834-9897
FAX: (205) 324-1133
Email: jhw@hsy.com
Email: gdj@hsy.com
Email: kds@hsy.com
Attorneys for Plaintiffs

Peter J. McNulty
California SBN 89660
MCNULTY LAW FIRM
827 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 471-2707
FAX: (310) 472-7014
Email: peter@mcnultylaw.com
Attorney for Plaintiffs

Matthew J. Geragos
California SBN 153390
GERAGOS LAW GROUP
150 S. Los Robles Ave., Ste. 665
Pasadena, CA 91101
Telephone: (626) 449-8700
FAX: (626) 449-8702
Email: matthew@geragoslaw.com
Attorney for Plaintiffs

Stephen C. Neal
California SBN 170085
Scott D. Devereaux
California SBN 146050
Kathleen H. Goodhart
California SBN 165659
COOLEY GODWARD KRONISH, LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5152

FAX: (650) 857-0663
Email: nealsc@cooley.com
Email: devereauxsd@cooley.com
Email: kgoodhart@cooley.com
Attorneys for Plaintiffs

Kirk D. Tresemer
Colorado Bar #8502
Darren A. Natvig
Colorado Bar #35491
IRWIN & BOESEN, P.C.
4100 E. Mississippi Ave., Ste. 1900
Denver, CO 80246
Telephone: (303) 999-9999
FAX: (303) 320-1915
Email: ktresemer@coloradolawyers.com
Email: dnatvig@coloradolawyers.com
Attorneys for Plaintiffs

Paul R. Alanis
California SBN 56423
Loren S. Ostrow
California SBN 77665
ALANIS & OSTROW
150 S. Los Robles Ave., Suite 665
Pasadena, CA 91101
Telephone: (626) 356-1188
FAX: (626) 345-1164
Email: palanis@a-olaw.com
Email: lostrow@a-olaw.com
Attorneys for Plaintiffs